## No. 10,360.

## V. & A. MEYER & CO. ET AL. VS. THE QUEEN INSURANCE COMPANY.

In construing insurance contracts in which there is some ambiguity, courts should be guided by the rule that where two interpretations equally fair may be given, that which gives the greater indemnity shall prevail.

Under a policy which does not forbid repairs *per se*, but imposes the condition on the insured to obtain the written consent of the company before doing any act which may increase the risk insured against, courts will not conclude that repairs, though very extensive, and bordering on reconstruction, operate an increase of risk, but will weigh the degree of care used by the insured, while making such alterations, and all circumstances connected with the operations, and decide such case on the particular showing therein made.

An addition or extension to an insured building does not of itself operate an increase of the risk. The improvements made to the building in connection with the extension may decrease the risk.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies*, J.

---

*Farrar, Jonas & Kruttschnitt* for Plaintiffs and Appellants :

Suit on policy of fire insurance. Two defenses urged, *i. e.*:

(1) False representation and concealment as to character of risk when policy was issued.

(2) Material alterations during the term of the policy. whereby risk was materially increased or enhanced.

II.

The character of the risk was not misrepresented:

(a) Where two interpretations, equally fair, may be given, that which gives greater indemnity will prevail. May on Insurance, sec. 174.

(b) "Brick-shingled sugar house and purgeries" is not a representation that purgeries are "brick-shingled, " but only that sugar house is brick-shingled.

(c) If purgeries be part of sugar house, this express segregation of them from the sugar house strengthens our contention,

(d) The frame tower was built over purgeries.

V. & A. Meyer & Co. et al. vs. Insurance Company.

(e) Application was filled up by agent of company; the latter is, therefore estopped from setting up misdescription, due to mistake of such agent. Ins. Co. vs. Wilkinson, 13 Wall. 222. Phœnix Ins. Co. vs. Allen (Sup. Ct. Indiana), 10 N. E. R. p. 85. Wood on Insurance, p. 49. May on Ins., sections 141 and 341, and many cases cited by the Indiana Court.

### III,

The alterations and repairs did not increase, but on the contrary dimished the risk.

(a) The policy sued on is a liberal one, and does not prohibit all alterations and repairs, nor the presence of workmen; it prohibits increase of risk alone.

(b) Changes were:

(1) Replacing old walls with new.

(2) Replacing shingled roofs with corrugated iron.

(3) Replacing wooden shutters with glazed sash.

(4) Destruction of frame shingled boiler shed, which existed at a point exposed to danger of fire from numerous plantation buildings.

(5) Replacing of shingle covered boiler shed, by one covered with corrugated iron.

All of these improved risk.

(c) Change alleged to have increased risk is planking up part of cane shed and placing mill therein.

(1) This not pleaded in avoidance, and it should have been pleaded under well settled principles of insurance law. Pino vs. Merchants' Mut. Ins. Co., 19 Ann., 214.

(2) Trifling, immaterial and no real increase of a risk covering many frame structures at at its very inception.

(d) Opinion of witnesses as to increase of risk, utterly immaterial.

(1) Defendant itself first raised the point, and plaintiff acquiesced in the ruling of the court excluding such evidence.

(2) Wood on Ins. (2 Ed.) p. 581.

(e) Changes were consented to.

Testimony of W. A. Labatt and C. M. Eiseman. Story vs. Hope Ins. Co., 37 Ann. 255.

---

### *Harry H. Hall* for Defendant and Appellee :

1. A material misrepresentation, though honestly made, will avoid a policy. 90 N. Y. 450 ; 98 Pa. (St.) 41 ; 13 Phil. (Pa.) 139 ; 35 Ann. 1353 ; 56 Iowa 400 ; 34 Md. 582 ; Woods 555. Vide 23 Ann. 458 ; 1 Story 57.

A misrepresentation which it is to be presumed has induced the insurance, though it did not affect the risk in itself considered, violates the contract; the slightest fraud, though duly legal, defeats the insurance. 13 Ann. 246 ; 23 Ann. 459.

Suppression of a material fact. material to the risk, and not within the knowledge of the insurer, vitiates the policy. Woods 597, 574.

" Where there is a material misdescription of the premises, although resulting from inadvertence, a policy issued under such erroneous description is void. Thus, where an application for insurance described the building as a stone dwellinghouse, it appeared on proof that the building was in fact a stone building with a wooden kitchen attached. Held : that the application could not be deemed confined to the stone building exclusive of the wooden one. A kitchen constitutes part of the dwellinghouse. A policy of insurance must attach to the whole or it will not to any part of it, and consequently there was no valid contract of insurance. " 20 N. Y. 52 ; Wood Fire Ins. 540.

"The insurer has a right to be informed of every circumstance which may fairly influence him in taking or rejecting the risk or fixing the rate of premium, and it is settled beyond all question that the suppression of a material fact avoids the policy."

V. & A. Meyer & Co. et al. vs. Insurance Company.

"Facts such that if the truth had been known they would have influenced the insurer in accepting or rejecting the risk or in fixing a higher rate of premium (Woods 506, 525)—such misrepresentation vitiates policy." 2 Peters 25; 3 Bres. (S. C.) 522; Wood, p. 505.

In Prudhomme vs. S. Fire Insurance Company. 27 Ann. 695, the fact that the goods insured were left in a tavern instead of a store, as represented, vitiated the policy. The court says:

" We still think the insurer not liable under the circumstances; for whether the building be a tavern (the word used in the policy) or a hotel (by which it is designated in the record), there was such misrepresentation of a material fact as to avoid the policy, the premium of insurance in such buildings being higher than that paid by the insured in this instance. " 56 Iowa, Glode vs. Germania Ins. Co., p. 400.

A statement that the encumbrance on a piece of property was $3000 when it was really $4000 vitiated the policy, although they acted in good faith. 90 N. Y., p. 450.

A party represented that his building was insured for a certain amount when in reality it was more. Held: though party may have acted in good faith, yet same vitiated policy.

2. The risk was materially increased by the demolition and reconstruction of the greater part of the sugar house, without the company's consent thereto being endorsed upon the policy.

In Wood on Fire Insurance, p. 609, it is said: " Not only does the removal of the building insured in whole or in part, and its replacement by a new one, destroy the policy, but any material alteration of the risk, whereby the risk is increased, has that effect. Flanders, p. 516, 518; 14 Allen 329.

And at page 611 it is held: " The facts in this case show a deliberate and considerable alteration of the building, not incidental to the ordinary use of the property, prolonged for three weeks, and while it lasted increasing the risk. There is nothing in the words of this condition to warrant us in holding that the alteration which increased the risk for such a length of time did not void this policy. On the contrary, one probable object of the condition requiring the written consent of the president seems to us to have been to enable the insurers to charge an additional premium."

And again: "If the risk was increased at the time of the fire, contrary to the terms of the policy, the insurers were not liable, even if the acts which increased the risks did not cause the fire. 21 Pick. 162; 3 Kent (6th ed.) 374; 9 Gray 27.

" Such increase of risk may avoid a policy, even should it contain no provision to that effect." May 279; Berryman 623 : 5 Houst. (Del.) 101.

" Any increase of risk avoids." S. 658; 16 Md. 377; 12 Wis. 377.

"If risk actually increased, immaterial whether loss occurred thereby." Flanders 514; Sansum 655; 21 Pick. 162; 16 Gray 296; 14 Allen 329; 99 Mass. 160.

"Increase of premium one-half per cent material." S. Rep. 655; 17 Barb. 11.

" Parol testimony admissible as to increase of risk." Flanders 521.

" Effect of repairs." Flanders 532.

" By the addition of third story, at time of loss, the building did not correspond with the description named in the policy, and the insurers were released." Sansum 659; Sillem vs. Thornton, 3 El. & Bl. 868; 18 Jur. 718.

In Flanders, at page 510, it is held: " Where the stipulation of the policy is that a prohibited use shall, so far as such use continues, make the policy to cease and be of no force, the insurance is suspended during such use. When the use ceases then the policy is again in full force. But, on the other hand, if the stipulation is simply that a prohibited use shall vitiate the policy, such use renders the policy absolutely null and void. And thus, although the loss happens, it is in a mode not affected by the false warranty."

" Risk diminished cannot be offset against risk increased." Sansum 659; Woods 599; 22 V. Can Q. Bench 310; do. 13, page 99; 89 Penn. 438.

The opinion of the court was delivered by

POCHÉ, J.   This action is on a policy of insurance on a sugar-house, which was totally destroyed by fire on January 4, 1887.   The amount of insurance was $10,000, and the amount claimed is $8,802 84, as the proportion due by the defendant; there being insurance on the same property in another company.

Plaintiffs appeal from a judgment which rejected their demand in full. The defense on appeal presents three points, which are all three predicated on the following stipulations contained in the fifth, of certain conditions appended to the policy.

" This policy shall become void, in case the assured shall have made any false representation, or concealed any fact material to the risk, * * * or   in case the risk insured against be increased by any means whatever without the insured giving notice to the company and obtaining the written consent therefor endorsed on said policy."

The grounds of defense are :

1st. That the building insured was described by the insured as "his brick shingled sugar-house and purgeries," when in fact one of the purgeries was a two-story frame structure.

2nd. That without giving notice to the company, and without its knowledge or consent, the insured tore down and completely demolished a large portion of the sugar-house, which he rebuilt, making a new sugar-house, of new and different materials; that he destroyed the boiler-sheds, building new ones in their stead in a different place, and that he increased the size of the cane-shed by some eigty feet in length, which works were not ordinary repairs, but new constructions, during the making of which, from the 8th of August to the 6th of October, 1886, the buildings were placed, and remained, under the control of numerous workmen, thereby materially increasing the risk insured against.

3rd. That without the knowledge or consent of the company, the insured converted the two-story frame structure described as a "purgery" into a sleeping apartment, in which was erected a stove, the pipe of which passed through the side or window of said building, in which sugar-house hands slept, and in which the fire alleged to have damaged the sugar-house originated, thus changing the use of said purgery in violation of a stipulation in section 5 above referred to, in which it was covenanted that the premises should not be occupied or used for any other purpose than that stated in the policy.   The policy was issued to Adolph Meyer, the owner of the property, and purported to cover the following risks : "3000 on his brick shingled sugar-house and purgeries ;

$4250 on his vacuum pans; $500 on his other machinery and appurtenances, exclusive of pumps, tanks and mill, pro rata, contained in above described buildings; $250 on his boiler-sheds; $2000 on his boilers while contained therein."

I.

On the first ground of defence, it is in proof, and it is not denied by plaintiffs, that one of the purgeries was a wooden structure; but the question for discussion is to ascertain whether the insured had represented it as built of brick.

Our construction of the language used as hereinabove transcribed does not justify such a conclusion. In quoting the words, "*brick shingled sugar-house and purgeries,*" defendant's counsel inadvertently, but invariably puts a *comma* between the words "brick" and "shingled;" and thus punctuated, the sentence might be construed as meaning a "brick and shingled sugar-house" and "*brick purgeries.*" But there is no such punctuation either in the application for insurance, or in the policy itself, which is before us in its original form.

And besides, in the item referring to the insurance on machinery and appurtenances, the policy contains the statement that the same "are contained in above described *buildings.*"

The use of the word "buildings" in the plural, in referring to the "brick shingled sugar house and purgeries," shows clearly to our minds that the parties did not consider the "sugar house" and the "purgeries" as a unit or as a single entity, forming together but one object or building, and thus as all covered by, or included in, the same description.

And in point of fact the diagram of the insured buildings shows that the two side purgeries as described were merely wings of the main building. The evidence shows, as all persons familiar with the peculiar construction of sugar houses know, that purgeries are not usually considered as parts of the sugar house proper, from which they are generally separated by a wall or other partition. A purgery is a room in which hogsheads full of sugar are placed in a standing or upright position for the purpose of being drained. To drain sugar is to separate the molasses contained in all sugars cooked or boiled in open kettles from the sugar itself. Through small holes or apertures made at the bottom of the hogshead, large enough for a liquid to run through, but not large enough to pass sugar or solid matter, the molasses run into a reservoir, usually of cemented brick, over which the hogsheads, containing sugar, are placed on beams or rafters laid on the brick walls of the reservoir at a short distance from each other.

These buildings or apartments are not usually built as staunch as those

portions of the sugar house which are specially devoted to the extraction of the juice from the cane, and to the boiling of it into sugar; and hence they are generally less exposed to destruction either from fire or from boiler explosions, as they are remote from places where intense fire is handled or used and steam generated.

Hence it is that "purgeries" are usually mentioned as separate appurtenances in descriptions of sugar houses, especially in contracts of insurance, and for that reason the insured in this case, and the company itself, make a distinct and a separate mention of them. From all of which we conclude that the insured did not intend to represent, and the insurer did not understand, them to be described as brick structures.

Hence the case does not fall within the effect of the rule invoked by defendant's counsel, as settled by the case of Chase vs. Hamilton Ins. Co., 20 N. Y. Reports, p. 52, in which it was held that the description of a "stone dwelling house" included the wooden kitchen, and that the latter should have been specially mentioned to avoid the effect of misrepresentation.

If even we had felt a doubt as to the correctness of our construction of the language used by the insured, and had hence concluded that the language was ambiguous, we should have reached the same result, under the guidance of the wise rule culled from judicial interpretations of similar language, and formulated by Mr. May in his valuable work on insurance.

Speaking of insurance contracts he says: "Having indemnity for its object, the contract is to be construed liberally to that end, and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give. The spirit of the rule is, that where two interpretations equally fair may be given, that which gives the greater indemnity shall prevail." May on Insurance, sec. 174, p. 203.

We are, therefore, clear in our conviction that the policy was not avoided by any alleged misrepresentation on the part of the insured.

## II.

On the second point of discussion the record shows that very extensive repairs and radical changes were made in, to and around the sugar house, and that for the purpose of making the same, large numbers of workmen were employed about the buildings from the beginning of August to the middle of October, 1886.

A portion of the sugar house property, about 100 feet in length by 47

feet in width, was entirely replaced by a new structure of the same dimensions; the former boiler sheds, one of which was on either side of the sugar house, were torn down; and all the boilers were concentrated on one and the same side and covered by a single shed. The cane shed was enlarged by 80 feet, and a portion of the former shed was enclosed by planks and converted into a mill and engine room.

The entire roof of the whole sugar house, including all accessory buildings, was renovated and altered from a shingle to a corrugated iron roof. The condition in the policy did not forbid repairs *per se*, but only incidentally in so far as they might tend to increase the risk. The repairs, alterations and reconstruction were made during the summer months, when the building was vacant and unoccupied or used for no purpose incident to the ordinary use of a sugar house. They were made at a time when no fires are needed or used for warming purposes; and the whole labor and operations were throughout carried on under the supervision of the plantation manager or overseer. Hence we conclude that during that time the risk insured against was not increased.

Now as to the changes and alterations made, we find that far from increasing the risk, they palpably and materially decreased the same.

We have no hesitation to declare that, in our opinion, the sugar house, after the repairs, alterations and reconstruction complained of had been completed, was a far better risk for insurance against fire than it was at the time when the policy was issued.

An immense area of shingle roofs had made way for corrugated iron roofs, a style of materials thus used on account of its recognized safety from fire.

Wooden windows and shutters had been replaced by glazed sash.

Old and dangerous boiler sheds had made way to a shingle shed, enclosed and covered with corrugated iron.

And we feel confident that the danger from fire to that portion of the cane shed, which was used for a mill and engine room, had thereby decreased instead of being increased. An open space covered with shingle, resting on wooden posts, under which cane straw was unavoidably spread about; under which work was done by promiscuous laborers, and requiring no special skill, in close proximity to the engine boilers and to the fire furnaces and opened to winter winds, is certainly a more prominent danger point for fires than the same place, under an iron roof, enclosed by planks, resting on brick foundations, lit up by means of glazed sash, and under the control of skilled laborers, such as engineers and their assistants. Surely counsel cannot be serious

in arguing that such an alteration would increase the risk of fire insurance.

As to the extension of the cane shed, we hold that the new shed, as it stood on the day of the fire, although larger than it was at the date of insurance, but with an iron, instead of its former shingle, roof, was less exposed to fire than it was before.

We have carefully studied all the authorities submitted to us by defendant's counsel, and we are aware that some decisions are to the effect that an extension of the insured building is considered as an avoidance of the policy.

But we prefer to adopt the views of those courts which hold that the rule is not absolute, and that each case must be tested under its own peculiar circumstances, to be left to and weighed by the jury. May on Insurance, sections 222, 223, 224; Jolly's Administrator vs. Baltimore Equitable Society, reported in Burnett's Fire Insurance cases, p. 187.

We understand the correct view to be in the construction of insurance contracts, that the insurers must be protected against the recklessness or fradulent practices of the insured, and that the true intent of both parties, tested in honest purposes and with fair intentions and proper motives on both sides, are to be sought and should be enforced.

We understand that the numerous conditions appended to the policy in this case, and to insurance contracts generally, and usually printed in such small type, that the best and keenest eyes are needed to decipher them, are intended to screen the company against fraud and deception, but not to entrap the guileless insured who honestly seeks protection from unforeseen and, above all, unexpected losses by fires, either accidental or incendiary. But surely courts would be recreant to their plainest duty, if defences, resting on such conditions seldom brought home to the insured in any other way than by small print very difficult to read, would meet with favor.

In this very case one of the conditions printed in most diminutive type, is to the effect that the policy is to become void, in case the insured building "shall be or become vacant, or unoccupied." Now, surely everybody, including the insurance company, knows that between the month of March at the latest, and October, sugar-houses are not used, and are therefore vacant and unoccupied. And yet such a clause was left in this contract. It is hardly to be supposed that if this sugar-house had been burned at any time between these months, such a defence could have prevailed.

In view of such transactions we somewhat share the indignation felt by the Supreme Court of Illinois, when it said: "Such conditions,

printed, as they usually are, in the smallest type, and read with great difficulty, are but traps when the attention is not called to them." 62 Ill. 460, Jones vs. Insurance Company.

### III.

There is no more force in the third contention of the defendant, which is to the effect that the risk was increased by converting and using one of the buildings described as a purgery as a sleeping apartment for sugar-house employes, with the luxury of a stove.

It is in proof, and it appears from the application of the insured, that the sugar-house was worked exclusively by steam, and that vacuum pans were used in boiling the sugar.

Now it is well known, as is shown by the evidence, that in such sugar-houses purgeries are not used as such, the sugar being drained by means of centrifugals. Hence it follows that in the present case the word "purgeries" was simply used as descriptive, and not as a representation that the buildings described as "purgeries" were absolutely to be used as such.

It is in proof that the three apartments named "purgeries" had been originally built for such purpose, but that such use thereof had been abandoned long before the date of this insurance.

But, be that as it may, it is in proof that in many sugar-houses, and particularly in the one now under discussion, in the vacant loft above the purgery proper, sleeping commodities were adapted for sugar-house hands, who do night work, some of whom are awaked at midnight, others retiring for rest at that time.

The evidence shows that such use of one of the so-called purgeries had prevailed for several years before the fire, and that the obnoxious stove had been placed therein since the year 1882. After a thorough review of the many defences very ably discussed by counsel for the defendant, we reach the conclusion that the case is with plaintiffs, and that they are entitled to recover on their policy.

But we are in accord with defendant's counsel that the amount of their claim is not supported for more than $6556.

His calculations on that point are correct, and they find ample sanction in the evidence which it is unnecessary to detail in this opinion.

It is, therefore, ordered that the judgment appealed from be annulled, avoided and reversed; and it is now ordered, adjudged and decreed that plaintiffs do have and recover judgment against the defendant company in the sum of six thousand five hundred and fifty-six dollars, with legal interest from January 4, 1887, until paid, and for costs of suit in both courts.

### On Application for Rehearing.

The charge in support of this application is that the decision of the court is grounded on manifest errors of fact, and on a lack of appreciation of the law which should control the case.

The charge is very grave, and coming from counsel to court, it might perhaps be deemed harsh.

But it is made with such naive candor and it is pressed with such courteous and respectful earnestness that it brought trouble to our consciences, lest perhaps the case had received more impartial consideration at the hands of complaining counsel, who was fresh from the heat and excitement of combat, than it had found at the hands of five, cool-headed and disinterested judges who had, or at least should have, quietly followed up the battle, without favor or prejudice.

Hence we deemed it our duty to re-examine the case in full, and we feel much relief in being confirmed in the conclusion that the judgment previously rendered by us, is just and righteous, and that it need not be disturbed.

As stated in the first opinion, we did find some decisions which favored the views taken of the law of the case by defendant's counsel, but we thought it wiser to follow the rules laid down by other equally respectable authorities, which commended themselves to our favorable consideration. We therefore reaffirm the conclusions of law by which we were guided in our deliberations.

Counsel complains of our failure to notice the point which he had made in his first brief, concerning the misrepresentation in Meyer's application for insurance, by omitting to mention the existence of a tower reaching high above the roof of the sugar-house, and built of wood. It is in proof that such a tower did exist, and that it had been constructed in the year 1882.

But turning to defendant's answer, we find that no point was therein made on that score. The complaint there was that the obnoxious tower had been constructed since the date of the policy, or after January, 1886.

Hence we paid no attention to the tower as an element of defence. Pino vs. Ins. Co., 19 Ann. 233. The allegation of the answer on that point is in the following words:

"That by the erection of a tower 40 feet high, 22x22 feet, rising 20 feet above the roof of the sugar-house, and by the erection of sky-lights thereon, the risk was materially increased." * *

But the evidence in the record, which is quoted in the brief on the

application for rehearing, shows that the tower had been in existence since 1882. It certainly fails to support the allegation that its construction had operated an increase of the risk. In dealing with the feature of the case our only embarrassment is to determine which destruction is the most effective, that of the allegation by the proof, or that of the present contention of the defendant by the allegations in its own pleadings. But one thing is certain, and it is that the parties litigant must be bound by their pleadings.

The pleadings are to the judicial mind what the compass is to the navigator, they must always be consulted and never lost sight of, although counsel, in their zeal, may drift far away from their moorings.

It is not our province, nor is this the place, to deliver a lecture on the rules of practice, but we are constrained to say that an attempt to improve defective or obscure pleadings, for the first time, in an application for rehearing is rather tardy and cannot be countenanced.

Conceding that we erred, as a question of fact, in finding that the entire roof of the sugar house, including that of the new engine room had been changed from shingle to corrugated iron, that fact is immaterial either on the question of misrepresentation, or on that of the alleged increase of the risk, the only two lines of defence. In the application for insurance the whole sugar house is described as shingled roof; and it is shown that after the repairs and alterations complained of had been made, the largest part of the building, 303 feet in length, was roofed with corrugated iron.

We are thorougly satisfied that our decree has done full justice, and hence we must decline to reopen the case.

Rehearing refused.