HENRY F. TURNER, Judge pro tem.
Alleging that as a result of a permanent wave given by defendant’s operator her hair was ruined and her scalp was burned, causing her to become bald, plaintiff prayed for damages against defendant in the sum of $800, $200 for physical pain and suffering, and $600 for “ruination and loss of head of hair.” Defendant denied that damage to plaintiff’s hair was due to any negligence on his part, averring that only the best chemicals were used in giving the permanent wave and alleging that whatever damage plaintiff suffered was due to the fact that she, over the operator’s objection, immediately, while the hair was wet and ready to be set, brushed it with a stiff nylon brush.
There was judgment in the First City Court of New Orleans in favor of plaintiff for $600 and defendant has appealed.
Plaintiff’s allegations of specific acts of negligence which caused injury to her hair are very similar to those recited in the case of Lanza v. Metcalf, La.App., 25 So.2d 453. There it was held that the charges of negligence, insofar as they involved the waving solution used and the machinery and equipment employed, were not sustained by the evidence. Plaintiff there, as in this case, attempted to show that if defendant’s operator was guilty of negligence which caused the accident, such negligence consisted of the application of excessive heat to the hair or lack of needed care and attention to the customer while the wave-was being given. The court in that case applied the doctrine of res ipsa loquitur,, and found for plaintiff.
Plaintiff had never patronized defendant’s beauty parlor before this first time, and entered it with a friend, who herself was given a shampoo and set by the same operator while plaintiff’s hair was being given what is known as a cold permanent wave. This means that the hair is “shampooed first, cut and rolled, processed, neutralized, put up in curlers and dried.” *245 Plaintiff says that this operation took two hours and contends that it was too long a time which is the reason her scalp and hair started to burn. When she saw her reflection in the mirror before which she had to sit to allow the operator to set her hair, she became incensed with what she saw— the hair was so badly burned that she says three curls fell off and so much burned hair dropped off that she was able to scoop up from the floor a handful and retain it in a handkerchief until the trial of this case three years later when it was exhibited to the court and to witnesses to show its burned condition. Plaintiff was furious and left the beauty parlor with her friend, refusing to pay $6, the cost of the permanent wave.
Plaintiff’s daughter corroborates the plaintiff’s testimony on the condition of the hair before and after the cold wave was given and also as to the pain her mother suffered for several months. She took plaintiff to a doctor who prescribed an ointment to use on the scalp, or the three burned spots, and pills for the relief of pain. However, the record does not contain any medical testimony, bills of the doctors, etc. The record does show that plaintiff’s hair had grown back to its former condition and the one scar on her scalp was covered with hair also, although there was a slight scar measuring from one-eighth to an inch long.
Plaintiff’s principal witness, another beautician who saw her two days after the incident, is of the opinion that plaintiff’s hair had been overprocessed and the solution allowed to remain on too long which caused the hair to burn. This witness also told the most fantastic story of having met, almost a year later, her cousin who happened to be the same operator involved and says that the operator herself felt that she was too inexperienced to give the wave, and even more so since neither the owner nor the manager was present in the beauty parlor at the time. And, as in the Lanza case, supra, the testimony of the operator who gave the permanent wave and did the actual work was not introduced.
Defendant’s witness, his acting manager who had been with him for thirteen years and a beautician of some twenty-two years’ experience, gave a completely different version of the incident and denied that plaintiff walked out bald-headed. She says that plaintiff’s hair was first shampooed, cut and put up on rods or curlers, processed, neutralized, and thereafter when the wave was finished, the curlers were taken down and the hair rinsed with water; that a proper special solution for tinted and bleached hair was used; that plaintiff sat at the table and brushed her hair vigorously and refused to let the operator complete the job of setting, drying and combing it. It is this witness’s opinion that a fresh permanent should not be brushed when soaking wet because the hair is in a weakened condition and the scalp and hair will become irritated by it. According to her testimony the plaintiff behaved like a maniac and threatened to punch the operator, and, having refused to permit the operator to complete the job of setting and drying her hair, plaintiff stalked out of the place with her friend without paying for the work. Plaintiff’s witnesses deny that she was present at all.
Defendant in the case testified that all the solutions used by these operators were of the very best quality.
It is our opinion that the facts of the case warrant application of the doctrine of res ipsa loquitur which plaintiff has plead in this case. Although we feel that the facts testified to by plaintiff are exaggerated, we feel that she has made a prima facie case which appellant has failed to overcome and that the trial court was correct in awarding damages to her.
There is no question but that something out of the ordinary happened to Mrs. Martin and that her hair was damaged. When women submit themselves to a beautician, they do so with the full knowledge that the process of making them beautiful is going to be uncomfortable, time-consuming and painful to a certain degree. However, we feel that in this case the beauty operator *246 inflicted more than the normal and customary punishment attendant upon these operations upon the plaintiff. Certainly something triggered her tantrum.
Ordinarily the appellate court will not disturb the finding of the lower court on questions of fact or quantum of damages unless same appears to be erroneous. In this case we find that the proof in the case is at such variance with the pleadings that we have examined the testimony thoroughly.
Although plaintiff alleged she suffered injury to her neck, there is not one iota of evidence to support that claim.
The evidence in this case shows that although Mrs. Martin stormed out of the place of business of defendant threatening suit, no claim was actually made until many months thereafter and then at a time when the alleged injuries and damage had healed and become nonapparent. Of course at that time defendant was helpless to rebut plaintiff’s claim and was forced to depend, more or less, upon the word of plaintiff unless by cross-examination he is able to prove inconsistencies or exaggerations. For this reason the court should minutely scrutinize and carefully consider the plaintiff’s testimony and that of her witnesses. It does not appear from the record that plaintiff made known to defendant the names of the doctors who supposedly treated her and saw the condition of her hair and scalp until the day of the trial and even then she was not able to remember the name of one of the doctors.
We find that on the trial of the case counsel for plaintiff stated that this was not a medical case. It is noted that although plaintiff testified that she received medical treatment and incurred doctors’ and medicine bills, no claim is made by her husband for same. Of course where physical injury and pain and suffering are involved, medical testimony would be of great value to the court in determining whether or not the acts of defendant were negligent and of such a nature as to cause the injury and whether or not in the opinion of the expert such injury would cause the pain complained of. Counsel for plaintiff in this, case points out the fact that defendant’s operator who undertook to perform the services on plaintiff was not called as a witness. The testimony of another witness, this operator’s relative, indicated that said operator was available had defendant seen fit to call her. Counsel for plaintiff is correct in his statement of the law to the-effect that if a party to a lawsuit has a witness or evidence available which he declines or fails to use without an explanation, it is presumed that such witness or evidence would be against him.
Applying the same rule just stated, however, we find from the record that plaintiff kept all of her hair which she claims fell out, but, on the trial of the case, stated, that all but the portion introduced in evidence was thrown away prior to the trial. It appears to us that if she had kept all' the hair that she claimed fell out, it would have been advisable to retain it until the-trial. She further testified that photographs-were made to show the condition of her hair and head. Counsel for plaintiff stated that he had the photographs but failed to bring them to court, which strikes us as most unusual. Certainly if the photographs, depicted a bald-headed woman, the court would very much like to see them. The plaintiff also failed to call the two doctors-who she said saw the condition of her head' and hair just after the accident. These doctors could have been called as ordinary-unbiased and disinterested witnesses to testify to the facts they observed without voicing an opinion. Applying the same rules of evidence, we have to conclude that the failure to produce the pictures, the full amount of the hair, and the doctors’ testimony will have to mitigate against plaintiff’s case.
In the case of Lanza v. Metcalf,, supra, where the damage to plaintiff’s hair was similar to that we find in this case, the appellate court reduced the award of *247 the district court from $250 to $150. That was in 1946, however, and we take cognizance of the fact that the purchasing power of the dollar is somewhat less at this time, and consequently feel that an award of $300 will adequately compensate plaintiff for “ruination and loss of her head of hair,” which we interpret as meaning discomfort, embarrassment and humiliation.
Therefore, for the reasons herein given, the judgment appealed from is amended by reducing its amount from $600 to $300, and as thus amended, it is affirmed. Plaintiff is cast for the cost of appeal; all other costs are to be paid by defendant-appellant.
Amended and affirmed.