LOTTINGER, Judge.
This is a suit by plaintiff, Benton Casing Service, Inc. (Benton), against its insurer, Avemco Insurance Co. (Avemco), under an aircraft policy for the total loss of its airplane as a result of an engine malfunction and ensuing crash landing. From a judgment in favor of plaintiff, defendant appeals.
On September 1, 1976, Harry Roth, a pilot-salesman for Benton, upon departure from Lafayette Airport in a Cessna 185 amphib[1] experienced engine failure and executed an emergency landing resulting in extensive damage to the aircraft. Plaintiff, as owner of the aircraft, maintained a policy of insurance issued by defendant and in effect on the date of the accident. The trial court awarded plaintiff $42,500.00 together with 7% per annum interest from judicial demand, and all costs.
In denying coverage, defendant contends that Harry Roth, the pilot at the time of the accident, was not listed in the policy or in any endorsements and cites the following as found on the “declarations” page of the policy:
“Item 7. PILOTS: This policy applies when the aircraft is in flight, only while being operated by one of the following pilots (indicated by X below) who, (1) holds a valid and effective Pilot and Medical Certificate, (2) has a current biennial flight review and (3) if carrying passengers, has completed at least three Take-Offs and Landings within the preceding 90 days in an aircraft of the same make and model as the insured aircraft: * # % >>
*939 The only pilot listed is Sammy Whatley. In an endorsement to the policy the only pilot listed is Billy Kirkpatric.
The trial judge has not favored us with written reasons for judgment. In ruling for plaintiff he could have concluded that (1) because of the past activities of the defendant, Avemco is estopped from pleading the failure to include Harry Roth as a pilot, or (2) the failure to list Harry Roth as a pilot was not “such a breach as would increase either the moral or physical hazard under the policy,” La.R.S. 22:692.
1. ESTOPPEL
We find no evidence in the record which would lead this court to believe that past actions have placed the defendant in the position of being estopped from pleading the failure to include Harry Roth as a pilot. The office manager of Benton testified that it was not the custom to use a written form to add a pilot to the policy, but that a phone call followed up by written confirmation was sufficient. The representative of the defendant stated that phone calls confirmed in writing were accepted as accommodations to their insureds. In the instant case, however, no contact, either via telephone or in writing, with the defendant was made by plaintiff prior to the crash. Thus we conclude that the trial judge did not rule in favor of plaintiff based on a theory of estoppel.
2. MORAL OR PHYSICAL HAZARD
We are well aware that the general rule in Louisiana is that an insurance policy is a contract between the insured and the insurer, and thus, like all contracts it is the law between the parties. If the policy is clear and free from ambiguity, it must be enforced as written. However, “the trend of modern authority is to hold that there is no forfeiture if the breach of condition or warranty did not contribute to the loss, or did not increase the risk at the time of loss.” Appleman, Insurance Law and Practice, § 4146 at 439 (1972).
In Rodriguez v. Northwestern National Insurance Company, 358 So.2d 1237, 1240 (La.1978), Mr. Justice Dennis said:
“Due to the increasing complexity of insurance policies and to the greater danger of overreaching by insurers — ‘their gaining an unconscionable advantage by the use of complex policy provisions concerning facts that the untutored purchaser would be surprised to find relevant to his insurance coverage,’ — many states, including Louisiana, enacted ‘anti-technical’ statutes designed to preclude denial of coverage through the assertion of defenses not materially related to the risk. The statutes, in general, are of two types: one requires that the violation of the warranty must increase the physical or moral risk protected by the policy; the other states that a violation, in order to constitute a defense, must contribute to the loss.
“Prior to the time of the enactment of the anti-technical statutes, Louisiana courts followed the common-law rule of voiding an insurance policy upon a breach of warranty regardless of the materiality of the provision to the risk. Goicoechea v. Louisiana State Insurance Company, 6 Martin (N.S.) 51 (1827). Some insurance companies, however, included in the policy provisions further stating that the policy, would be of no effect if the insured in any way increased the risk to the insured property during the tenure of the policy. Meyer v. Queen Ins. Co., 41 La.Ann. 1000, 6 So. 899 (1890). See, Dittmer v. Germania Insurance of New Orleans, 23 La.Ann. 458 (1871).
“By Act 222 of 1928, the Louisiana legislature enacted an ‘anti-technical’ statute to limit defenses on fire insurance policies. The legislation, after amendment and reenactment as Louisiana Revised Statute 22:692, provides:
‘No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the application therefor. Such breach shall not avail the insurer to avoid liability unless such *940 breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business. Notwithstanding the above provisions of this Section, such a breach shall not afford a defense to a suit on the policy if the fact or facts constituting such a breach existing at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the fact or facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent of the insured, or collusion between such officer or agent and the insured.’ ” (Footnotes omitted.)
Additionally in Rodriguez, supra, the Supreme Court in speaking of the application of La.R.S. 22:692 said:
“It applies as well to warranty conditions upon fire insurance coverage included in contracts of insurance which cover a variety of risks. This Coúrt has previously applied the statute to a policy covering accident and theft in addition to fire losses. Lee v. Travelers Fire Ins. Company, 219 La. 587, 53 So.2d 692 (1951).”
In both Rodriguez v. Northwestern National Insurance Company, supra, and Lee v. Travelers Fire Ins. Co., supra, the Supreme Court refused to limit the application of La.R.S. 22:692 to strictly fire policies, and extended its application to fire loss included in policies covering other risks.
The policy in question insured against all risks. If Harry Roth was flying the aircraft and it caught on fire, La.R.S. 22:692 would be applicable in determining whether the failure to list Roth as a pilot is a valid defense. Rodriguez v. Northwestern National Insurance Company, supra, and Lee v. Travelers Fire Ins. Co., supra. To hold that La.R.S. 22:692 is applicable where there is a fire, and not applicable where there is an engine malfunction and resulting crash landing, under the same insurance policy, is illogical, unreasonable, irrational, inconsistent and self-contradictory.
We feel constrained, however, to intrude into an area in which the legislature has refrained from establishing an anti-teehnical rule for breach of an inconsequential condition for other than fire loss, irrespective of the policy coverage.
Since La.R.S. 22:692 is limited by this court to fire loss, we pretermit any determination as to whether the failure to list Harry Roth as a pilot increased “either the moral or physical hazard under the policy.” Under the above circumstances, we are of the opinion that the policy must be enforced as written.
Therefore, for the above and foregoing reasons the judgment of the trial court is reversed, and IT IS ORDERED, ADJUDGED AND DECREED that plaintiff-appellee’s suit be and the same is hereby dismissed with prejudice at plaintiff-appel-lee’s costs.
REVERSED AND RENDERED.

. An amphib aircraft can land and take off on both land and water.