53 So.2d 692

**LEE v. TRAVELERS FIRE INS. CO.**

No. 39977.

May 28, 1951.

J. S. Pickett, Many, for relator.

Thompson, Lawes, Cavanaugh & Hickman and John C. Camp, all of Lake Charles, for defendant, appellant and respondent.

HAMITER, Justice.

To recover for the loss by fire of his one and one-half ton Ford truck plaintiff instituted this suit on an insurance policy affecting it which was written by defendant. He prayed for a judgment in the sum of $975, plus statutory penalties and attorney's fees.

In its answer defendant generally denied liability, and it affirmatively averred as follows: "That in the policy which defendant issued to the plaintiff, it was pro-

vided that in the exclusion clauses contained therein that said policy did not apply while the vehicle described therein was subject to any bailment, lease, conditional sale, mortgage, or other encumbrance, not specifically declared and described in the policy; that at the time the policy was issued, and at the time the loss herein sued upon occurred, the vehicle insured under said policy was subject to a mortgage which was not specifically declared and described in the policy, and as a consequence, the policy sued upon does not apply and your respondent is not indebted unto the petitioner in any sum whatsoever."

In the district court, after a trial on a written stipulation of facts, there was judgment in favor of plaintiff for $800, plus 25% statutory penalties and $150 attorney's fees.

On an appeal to the Court of Appeal the judgment was reversed and plaintiff's suit dismissed. 44 So.2d 497. Thereafter, the case was brought here for a review of this decision, we having issued the writ of certiorari on plaintiff's application.

The policy of insurance forming the basis of this action recited a one year fire coverage (among others) on plaintiff's truck commencing April 15, 1947, and it was in full force and effect at the time of the loss on June 28, 1947. It also provided, however, that such coverage did not apply "while the automobile is subject to any bailment, lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy."

Declared on in the insurance contract was a chattel mortgage held by the Caddo Finance Corporation of Shreveport, and to it loss was payable as its interest might appear. But there were other chattel mortgages (hereinafter discussed) affecting the truck, in existence both when the policy issued and when the loss occurred, which were undeclared. It is because of these undeclared mortgages, along with the above quoted exclusion clause, that the insurer denies liability and offers the defense that the policy is inapplicable.

Plaintiff concedes, as he must, that in the absence of Act No. 222 of 1928, Louisiana Insurance Code, Section 15.02, LSA–RS 22:692, this defense would be good. He contends, however, that the provisions of that statute, which were in effect at the time of the issuance of the policy and of the occurrence of the loss afford him protection from the forfeiture. The pertinent statutory provisions read: "Be it enacted by the Legislature of Louisiana, That no policy of fire insurance issued by any insurance company, corporation, association, firm or individual, on property in this State, shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy, or in the application therefor, nor shall any such breach avail the insurer to avoid liability, unless such breach shall exist at the time

of the loss and shall be either such a breach as would increase either the moral or physical hazard under the policy, * *."

Heretofore, this court has had occasion to interpret these provisions. In Knowles v. Dixie Fire Insurance Company of Greensboro, North Carolina, 177 La. 941, 149 So. 528, 531, the plaintiff sought recovery on an insurance policy for the loss by fire of insured personal property. The defense was that there existed at the time of the loss an undisclosed encumbrance on the property in violation of the policy's chattel mortgage clause. In favoring plaintiff's demand the court announced certain principles respecting the proof required under the 1928 statute as follows:

"In view of the plain provisions of this act, the fact alone that the personal property covered by the policy is or becomes incumbered by a chattel mortgage does not of itself void the policy. On the contrary, if a violation of the chattel mortgage clause in the policy is pleaded as a defense, the insurer must show that a breach of the warranty or condition in this respect did in fact increase the moral hazard. Defendant in this case made no effort to show that the moral hazard was increased, but defended upon the sole ground that the property insured was incumbered at the time of the loss.

* * * * * *

"Under Act No. 222 of 1928, p. 291, the question whether the existence of the chattel mortgage on the property subject to the insurance at the time of the loss increases the moral hazard is one of fact which must be determined by the circumstances surrounding each case.

"In order that an insurer may avoid liability under a fire policy on the ground that the moral hazard was increased by a breach of the warranty contained in the chattel mortgage clause, it carries the burden of showing that the changed conditions brought about by the imposition of the mortgage were of such real and substantial character as might influence the insured in his conduct and attitude toward the property. The term 'moral hazard' as used in the act and in the decisions relates to the pecuniary interest which the insured or some other person has either in protecting the property from loss by fire or destroying it. The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. * * *

* * * * * *

"If the property insured is mortgaged for an insignificant amount, an amount out of all proportion to its value, it is not probable that the mere fact of the existence of the mortgage would be an inducement or temptation to the owner for burning it. He would have no pecuniary interest in doing so. On the contrary, if he were able to secure a mortgage on the insured property for its full value or an amount approximating its value, he would gain by

destroying it. In such case he would have no interest in protecting it, and might gain by destroying it. * * *

"Another feature which might enter into the question whether the existence of a mortgage on the property at the time of the loss would increase the moral hazard would be whether the owner was able to make his payments. If he were not and had lost hope, a burn might be a relief, and the mortgagee might feel the same way.

"Another circumstance to be considered would be whether the amount of the mortgage at the time of the loss had been reduced from its original amount and to what extent. Under the act, it is not the amount of the mortgage as originally given which is to be considered but the amount 'at the time of the loss.'

"What the act means is that, if at the time of the loss, not at any previous time during the life of the policy, there exists such a breach as would reasonably be said to increase the moral hazard, then the policy is void. No hard and fast rule can be laid down as to when such a breach exists. Each case must be determined according to its own facts and circumstances, and this is true whether the hazard be moral or physical. In either event, a plea that the policy has been rendered void by such a breach is a special defense which defendant must maintain in order to avoid liability. * * *"

The 1928 statute was considered again in Brough v. Presidential Fire & Marine Insurance Company, 189 La. 880, 181 So. 432, 434, the defense to the action on a fire insurance policy therein being that the insured building was not on ground owned by the plaintiff in fee simple as required by the contract. The court quoted from the Knowles case and said: "In view of the plain provisions of Act 222 of 1928, the fact alone that plaintiffs did not have a fee-simple title to the ground upon which the insured building was erected does not of itself void the policy. On the contrary, if a violation of the clause as to ownership in fee simple by the insured is pleaded as a defense, the insurer must show that a breach of the warranty or condition in this respect did in fact increase the moral hazard. Defendant company in this case made no such defense, but relied on the sole ground that plaintiffs did not have a title in fee simple to the ground on which the insured building was erected."

■ The Court of Appeal of the Orleans Circuit followed the Knowles and Brough cases in Rickerfor v. Westchester Fire Insurance Company of New York, 186 So. 109, 111, and with reference to them it observed:

"* * * Our appreciation of the court's opinion in the Brough Case is that the Act of 1928 affords an escape to the insurer only in cases where the surrounding circumstances existing at the time of the loss

were such as to warrant the conclusion that the insured would be in a better position, in the event his property was destroyed by fire, then he would have been if the fire occurred at the inception of the contract and that the insured's more favorable position at the time of the loss is directly attributable to his false representation. By this, we do not mean that the insured must necessarily gain as a result of the loss but that the false representation, when considered in connection with the circumstances existing at the time of the loss, was such as to sustain a holding that the insured would suffer less by a destruction of the property than would ordinarily be the case in the absence of his breach.

\* \* \* \* \* \*

"\* \* \* The Supreme Court has stated in the Knowles and Brough Cases that, where an insurance company seeks to avoid liability because of the breach of a material warranty contained in the policy, the defense must be pleaded specially and that the insurer has the burden of proving by a preponderance of evidence that the breach did increase the moral hazard of the risk. Inasmuch as that court has also said that the mere breach is of itself insufficient to establish the increase of hazard, it is necessary for the insurer to set forth the particular circumstances existing at the time of the loss upon which it relies to show that the hazard was in fact increased. \* \* \*"

For ascertaining the facts of the instant case, which are to be considered in the light of the above announced principles, we turn to the written stipulation of counsel that establishes them. It discloses that on April 15, 1947, the plaintiff, Ivy G. Lee, appeared before H. S. Henderson, a Notary Public of Caddo Parish, and executed a chattel mortgage in favor of one Fred Rivers to secure the payment of a note of $1152, it being payable in 12 consecutive monthly installments of $96 each commencing May 15, 1947. The chattel mortgage covered not only the Ford truck in question, then worth $1100, but also other personal property of plaintiff described and valued as follows: one Nabor's Trailer, $350; two horses, $350; and one Braden Winch, $150. The note, as secured, was sold immediately by Rivers to the Caddo Finance Corporation of Shreveport of which the said Henderson was manager. As a condition for this sale Henderson required the furnishing of fire, theft and accident insurance on the truck; and plaintiff acceded to the requirement, instructing Henderson to secure the insurance and paying to him the necessary premium. Thereupon Henderson, without inquiring of plaintiff whether the truck was affected by other chattel mortgages, prepared a written order for obtaining the insurance. At the time Henderson was not informed, and did not know, of any other chattel mortgages (except possibly one in favor of P. C. Fair Insurance Company, hereinafter mentioned).

Pursuant to Henderson's insurance order L. H. Snow, agent for this defendant, issued the policy involved herein. It was made effective as of April 15, 1947; it mentioned only the chattel mortgage held by the Caddo Finance Corporation; and it contained a loss payable clause in favor of that company. Regarding the policy's issuance the agent did not see plaintiff and had no conversation with him. Neither did the agent nor this defendant know of the existence of any chattel mortgage on the truck other than the one declared on in the policy.

On the effective date of the insurance (April 15, 1947), however, there existed three additional chattel mortgages affecting the truck which had been executed as follows:

(a) By plaintiff in favor of Reimer Calhoun, the balance due on the secured note being $395. It covered also the Nabor's Trailer of plaintiff valued at $350.

(b) By plaintiff's son, Homer Lee, in favor of P. C. Fair Insurance Company, the balance due on the secured note being $737.81. It covered also the mentioned Nabor's Trailer.

(c) By plaintiff in favor of V. H. Brumley, the balance due on the secured note being $200.

On April 16, 1947, which was the day after the granting of the Rivers note (purchased by Caddo Finance Corporation) and the commencement of the policy sued on,

plaintiff paid on the P. C. Fair Insurance Company note the sum of $600, leaving a balance due of $64.02. Rivers had been informed by plaintiff, at the time of the execution of the chattel mortgage in the former's favor (perhaps in the presence of Henderson), of the existence of that obligation.

The stipulation of counsel does not disclose other payments on any of the four chattel mortgage notes prior to the burning of the truck on June 28, 1947. However, according to the written reasons for judgment of the district judge, counsel for defendant admitted in their brief in the trial court that a balance of $990 was due on the Rivers note at the time of the fire. Payments totaling $162, in other words, had been made on that $1152 obligation. And in this court counsel do not deny the making of such payments.

Subsequent to the fire, as shown by the stipulation, the respective balances due on the notes secured by the Calhoun and P. C. Fair Insurance Agency chattel mortgages were paid in full.

The net damage sustained by plaintiff as a result of the burning of his truck amounted to $800.

These are the facts of the case. Now the question to be determined is: Has the defendant insurance company discharged the burden which it carries of showing that plaintiff's breach of the contract's chattel mortgage clause (failure to disclose encumbrances) did in fact increase the moral

hazard under the policy at the time of the burning of the truck?

In determining the question it is to be remembered that the existence alone of the three undeclared chattel mortgages does not of itself void the policy. But defense counsel draw various deductions from the existing mortgages; and, with those deductions as the sole basis therefor, they insist that the defendant has discharged its burden of proof.

Thus, counsel assert that the truck was mortgaged for an amount out of all proportion to its value, by reason of which the moral hazard was increased. In this connection they show that on April. 15, 1947, the effective date of the policy, the truck had a value of $1100 and was encumbered with mortgages totaling $2411.02; further, that on the occurrence of the loss on June 28, 1947, it was worth $925 and was mortgaged in the amount of $1649.02. But it is to be noted that the $2411.02 indebtedness was immediately (April 16, 1947) reduced to $1811.02 by plaintiff's paying the sum of $600 on the P. C. Fair Insurance Company note. Moreover, the greater part of the indebtedness, throughout the period in question, was secured by chattel mortgages not only on the Ford truck but also on other personal property of plaintiff valued at $850. With this additional property considered, it may be said that when the loss occurred the total indebtedness amounted to $1649.02 and the security for more than half of it had a value of $1775.

Of course, plaintiff's horses and winch (worth $500) were covered only by the finance company's chattel mortgage. And, by destroying the truck plaintiff would by reason of this, defendant contends that have been able to pay off that mortgage creditor and thereby free the horses and winch from the encumbrance. But this contention does not necessarily prove the theory of an increase in the moral hazard at the time of the loss on June 28, 1947, for plaintiff, had he been mindful to, could have obtained the same result immediately after acquiring the insurance.

Again, defendant maintains that an increase in the hazard when the burning occurred is established by the fact that plaintiff then was delinquent with his installments under all four of the notes. From the stipulation of counsel it does appear that payments were not made on the maturity dates specified; however, it does not appear that any of the creditors were threatening suits or otherwise pressing for payment. For all the record shows extensions on the installments may have been granted.

Nevertheless, if it be conceded that the above discussed circumstances (disclosed by way of deductions drawn from the mortgages) tend to aid the special defense that there existed an increase in the moral hazard, they, in our opinion, do not outweigh others favorable to plaintiff. Principally among the latter is the circumstance that after the insurance became effective plaintiff paid $600 on one of the undisclosed

mortgages and also the sum of $162 on the mortgage declared on in the policy. Had he intended to enrich himself at the expense of defendant, by a destruction of the truck, it would seem that these payments would never have been made.

Furthermore, on the day the truck burned it had a value of $925 and there was a balance due on the finance company obligation of $990. By destroying the truck plaintiff would have received none of the proceeds of the insurance, they having been made payable to such mortgagee. Besides, he would have been without his means of livelihood and he would have still owed a balance on that mortgage, as well as balances on the other three mortgages, two of which covered his Nabor's Trailer valued at $350.

It is important to notice also that there is no evidence whatever indicating bad faith or fraud on the part of plaintiff in failing to declare his mortgages at the time of obtaining the insurance. In fact, the policy was issued solely on the order of the manager of the finance company, and no inquiry was made of plaintiff by anyone respecting encumbrances affecting the truck. It is fair to assume that he was without knowledge that such information was a prerequisite for the insurance's effectiveness.

 It is our conclusion, therefore, that defendant has failed to show preponderately that plaintiff's breach of the chattel mortgage clause did in fact increase the

moral hazard under the policy at the time of the truck's burning.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside, and that which was rendered by the district court is now reinstated and made the judgment of this court. Defendant shall pay all costs.