LANDRY, Judge.
Defendants, Northwestern National Insurance Company and Interstate Surplus Underwriters, Inc. (Insurers), appeal from judgment awarding plaintiff, Robert Rodriguez (Insured), recovery of $25,000.00, pursuant to a fire insurance policy covering a 1972 Model Case Log Skidder (a log rolling and loading machine used in timber cutting operations), which machine burned while being used in Insured’s logging business. Insurers also appeal from judgment in favor of Crawler Supply Company, Inc. (In-tervenor), against Insured, Intervenor having sold the skidder to Insured who owed a balance of $13,374.06 on its purchase price. Insured has answered Insurers’ appeal praying for penalties and attorney’s fees which were denied by the trial court. We reverse and render judgment rejecting Insured’s demands.
Insurers urge that the trial court erred in: (1) Holding that the Insured’s breach of certain warranty provisions of the policy did not bar recovery for the loss; and (2) Awarding Insured the face value of the policy instead of a lesser sum for which the skidder could have been repaired.
Subject skidder, bearing Serial Number S 5429 — Body Type 300C, was purchased by Insured from Crawler on July 3, 1972, for the sum of $29,648.71. A credit of $5,790.76 was allowed for the tradein of an old skid-der, leaving a balance of $23,857.95, to which was added $6,711.33 for insurance and finance charges. At the time of purchase, insurance which Rodriguez held on his old skidder was transferred to the new machine until policy expiration.
On January 8, 1973, Northwestern’s agent, Interstate Surplus Underwriters, Inc., insured the skidder against loss by fire “(among others)” in the sum of $25,000.00, for a period of one year. Financial Services of Baton Rouge, Louisiana, purchaser of the chattel mortgage note taken by Crawler in payment, was named as mortgagee. Insured paid Crawler the premium of $1,281.25 charged for the coverage.
Insurers declined payment of the loss because of Insured’s alleged breach of the following policy warranty condition:
“It is understood and agreed by the assured that as respects the peril of Fire this insurance is NULL and VOID if any condition of this warranty is violated as respects equipment insured hereunder while operating or located in woods or forest or while land clearing.

“2. It is warranted that an underwriters laboratory approved all purpose fire extinguisher with a rating of at least 1A or 10BC will be provided on each piece of equipment insured at all times such equipment is being operated and such extinguisher will be maintained in good working condition and recharged when necessary. The assured may remove the extinguisher when the equipment is not in operation to prevent theft.
“3. It is warranted that all equipment operated in the woods or forest or while land clearing shall be shut down and inspected at frequent intervals during the working day to remove any accumulation of leaves, trash or fuel from the engine compartment and specifically from the exhaust manifold and protection belly pan. It is specifically a condition that such trash and accumulation shall be removed before discontinuing work for the day.”
The skidder is best described as a ponderous machine equipped with a front end bulldozer type blade designed to roll and move *1240 logs. Immediately behind the blade is the engine compartment which houses the engine or power plant which furnished the energy for locomotion of the skidder and operation of its various power operated components. The sides of the engine compartment are enclosed with a heavy metal mesh which admits air for engine cooling and protects the engine and its accessories against damage from limbs, trees, brush and debris, the presence of which is expect-able. Immediately behind the engine compartment is the operator’s cab in which is situated the driver’s seat. Beneath the driver’s seat is the transmission which utilizes and controls the use of engine power according to the operator’s wishes at any given moment. The cab floor is covered by a metal plate referred to as the “floor boards” and which is held in place by a number of nuts and bolts. The floor boards are provided with appropriate holes or openings of various sizes and shapes to accommodate several levers, pedals and controls which extend into the cab for the driver’s use in operating and controlling the skidder. Behind the cab is a crane type unit used to pick up and pull logs. Subject skidder came factory equipped with a 5BC fire extinguisher mounted on a metal bracket welded to the right side of the driver’s cab. Prior to the fire, the fire extinguisher on Insured’s skidder was placed in a tool box at the rear of the unit because the bracket in which it was kept had been broken off by a tree or limb.
On November 29, 1973, the skidder was being operated by Insured’s employee, Jack Lanier, an experienced operator, in a wooded area approximately two and one-half miles from Springfield, Louisiana. Lanier had commenced work at 7:00 A. M., after first cleaning all accumulated debris from the engine compartment and other areas of the skidder, as was his daily custom. About noon, while the machine was in operation, Lanier noted fire coming from beneath the driver’s seat and floorboards of the cab. He jumped from the machine, obtained the fire extinguisher from the tool box, and attempted to put out the fire, but the extinguisher would not work. After several unsuccessful attempts to use the extinguisher, Lanier got into his truck, drove approximately one-half mile to a telephone, and summoned the Springfield Fire Department. A fire truck arrived on the scene approximately 20 to 30 minutes later, at which time the fire was raging up the sides of the skidder. The fire was eventually extinguished but the skidder was virtually a total loss. Neither the precise cause nor the origin of the fire could be determined.
Insured concedes he never checked the fire extinguisher after purchasing the skid-der. He trained Lanier as an operator but never instructed Lanier to clean the machine daily at frequent intervals. He did suggest that the machine be cleaned in the evening before Lanier left the jobsite. To Insured’s knowledge, Lanier never cleaned the skidder during the day unless some unexpected event, such as brush or limbs becoming lodged in the blade, made it necessary to shut the skidder down temporarily. Insured readily acknowledged that a skidder is highly susceptible to fire damage if trash and other combustibles are allowed to accumulate in the engine compartment and protection belly pan. It is conceded that Insured previously lost two other skid-ders by fire; one while a skidder was in operation, and the other while a skidder was being repaired in the woods by one of Crawler’s mechanics. Insured explained that he did not check the extinguisher or comply with the warranty regarding cleaning, because he had little formal education and did not read the insurance policy.
Lanier testified he cleaned the skidder each morning before beginning work and rarely cleaned it during the day. On the day of the fire he cleaned the machine before starting work and did not clean it thereafter. He stated he would occasionally clean the skidder during operation time but only when he felt he had some spare time. He testified that when he noticed the fire it was not coming from the engine compartment but from the transmission area beneath the driver’s seat.
Crawler’s Vice President, William Flores, and General Manager, William J. Busbee, *1241 testified in effect that their examinations disclosed the fire probably started in the transmission because that area of the machine appeared most heavily damaged. They both attested to extreme vulnerability of a skidder to fire, for which reason such equipment was difficult to insure. Busbee added that fire in the transmission would be difficult to combat without removing the floorboards which requires removal of several nuts and bolts which hold it in place. He explained that the only openings in the floorboards were intended to accommodate control devices and that these openings were small. He would not say that a fire in the transmission could not be controlled with a hand operated fire extinguisher, but he had serious doubts about the matter. He was of the opinion that to combat such a fire effectively, the floorboards would have to be removed. Busbee conceded that the collection of leaves, straw and oil in a skid-der are the main causes of fire in such equipment. He expressed the opinion that there is no really effective way to combat fire on skidders but that frequent cleaning during daily operation would materially reduce the hazard. He added, however, that such frequent shutdowns for cleaning would render skidders almost useless. He personally felt that, all things considered, a daily cleaning is a reasonable safety precaution.
Insured concedes the warranty conditions were not fulfilled. He reasons, however, that the breaches did not increase the physical hazard involved because the record shows an operable fire extinguisher of the type called for would not have extinguished the fire and also because the cleaning process was reasonable.
Insurers argue that the policy is subject to the general insurance law governing warranty as set forth by LSA-R.S. 22:641 because the policy warranty is in the nature of an executory or promissory warranty which is part of a “floater policy” providing multiple coverage. Section 641, above, provides:
“If any breach of a warranty or condition in any insurance contract occurs pri- or to a loss under the contract, such breach shall not avoid the contract nor avail the insurer to avoid liability, unless the breach exists at the time of the loss.”
Insurers urge that since the breaches existed prior to and at the time of the fire, the policy was voided pursuant to Section 641, above. On this premise, it is argued that to avoid liability for the loss, Insurers are not required to establish that the moral or physical risk was increased by the derelictions shown.
We disagree with Insurers’ contention because we are here concerned with fire coverage to which LSA-R.S. 22:692 applies, which said section provides:
“No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the "application therefor. Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business. Notwithstanding the above provisions of this Section, such a breach shall not afford a defense to a suit on the policy if the fact or facts constituting such a breach existing at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the fact or facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent or the insured, or collusion between such officer or agent and the insured.”
We note that Insurers’ argument was expressly rejected by the Supreme Court in Lee v. Travelers Fire Insurance Company, 219 La. 587, 53 So.2d 692 (1951). In Lee, *1242 above, it was held that Section 692, above, applied to a policy which provided “fire coverage (among others)”, on an insured truck. On authority of Lee, above, we hold Section 692 applicable to subject policy.
Citing Keeton, Insurance Law § 5.6 p. 320 (1971), Insured points out that the warranty concept in matters of this nature has been attributed to the opinions of Lord Mansfield during the 18th century. From his opinions, the rule evolved that if a policy condition is classified as a warranty, the policy is void if the warranty is breached. The rule applies irrespective of whether the breach contributed to the loss or damage. It would appear the rationale of the rule is that breach terminates all coverage because the insurer declines to continue the policy thereafter. As originally conceived, the rule voids the policy irrespective of whether the breach was material to the loss and even though it did not contribute to the loss or damage.
Keeton, above, p. 321, notes that the harshness of this rule resulted in policies containing numerous warranties, many of trivial character and nature which, in effect, constituted a trap for unsuspecting policy holders whose coverage was voided for insignificant warranty violations, regardless of how honest, sincere and careful the insured might be.
At page 382, Keeton observes that American legislatures have statutorily alleviated the harshness of the rule by enactment of laws falling into two general categories. The first type of such laws provides that to void coverage, the insurer must show an increase in risk resulted from the breach. The second type of such laws provides that coverage is not voided by warranty breach unless the breach contributes to the loss.
In interpreting LSA-R.S. 22:692, and its predecessor statutes, our jurisprudence has established the rule that an insurer is not required to show causal relation between warranty breach and loss to avail himself of warranty provisions in a fire policy. The insurer must, however, establish that the breach increased either the moral or physical hazard.
Apparently the earliest case dealing with the subject is Henry Dittmer & Theo. Pelle v. Germania Ins. Co. of New Orleans, 23 La.Ann. 458 (1871). In this case, an insured’s claim under a fire policy was resisted for breach of warranty against storage of the insured goods in a building containing hay pressed in bales. The merchandise was kept in a structure containing loose unbaled hay. The court held that a policy provision, prohibiting an increase in the risk by act of the insured, is an independent condition in itself and is not controlled or limited by a prior specification of risks or hazards which the insured agrees to guarantee against. The court also held that because the act of the insured increased the physical hazard, it voided the policy even though the particular hazardous condition brought about by the insured was not included in a specified list of hazards included in the policy. The court found that loose, unbaled hay increased the physical risk to the insured goods and thus voided coverage.
Meyer et al. v. Queen Ins. Co., 41 La.Ann. 1000, 6 So. 899 (1890), involved fire damage to a sugar refinery. The policy contained a provision requiring the insured to obtain the insurer’s consent before doing any act which might increase the risk insured against. The insured made extensive alterations to the refinery without the insurer’s consent. The court reiterated the rule that such a breach of policy conditions will void the policy if the moral or physical risk is increased. The court also noted that each case must be decided in the light of its own facts and circumstances. After considering the case in detail, the court concluded the physical risk was reduced by the alterations rather than increased, and the insured was permitted to recover.
In Fleet v. National Fire Insurance Co., 167 La. 74, 118 So. 697 (1928), defendant’s fire policy on plaintiff’s residence and other buildings provided the policy would be void “if the hazard be increased by any means within the control or knowledge of the insured”. The insured used the basement of the residence as a dance hall, and utilized an outbuilding for gambling. The court *1243 found the physical hazard to the structures were increased by such use, and voided the policy. The court found also that the insurer showed it would have charged a larger premium for such uses, if it would have insured at all. The court did not discuss the origin of the fire or causal relation between the breach and the loss.
Sigrest v. Federal Ins. Co., 14 La.App. 55, 129 So. 379 (1st Cir. 1930), involved an insured’s breach of warranties by having cement or metal flues in his fireplaces and keeping four or five sticks of old dynamite on his premises. The court found no increase in the physical hazard because the flues used were as safe as flues made of brick or mortar. The court also found the dynamite did not increase the physical hazard because its age rendered it harmless except under most extraordinary circumstances. We note that in this case the court added, by way of dicta, that the breaches involved were not the cause of the fire because the room in which the breaches occurred were not destroyed in the fire.
A restaurant owner, suing to recover the value of equipment, furniture, fixtures and grocery stock destroyed in a restaurant fire, was denied recovery for the grocery stock in Knowles v. Dixie Fire Ins. Co. of Greensboro, N. C., 177 La. 941, 149 So. 528 (1933). The court found that the insured’s failure to keep a stock inventory, as required by the policy, voided this coverage. Recovery was allowed, however, for the furniture and fixtures destroyed in the fire.
In Terwilliger v. Union Fire, Accident & General Ins. Co., 185 So. 43 (La.App. Orleans, 1938), the court voided a fire policy where the insured violated a warranty provision that the property would not be left vacant for more than 30 days or unoccupied for more than 60 days. Despite the insured claims he visited the premises once or twice weekly, spent the night there on occasions, and had a neighbor watch the property, the court found the warranty breached. Upon finding the breach increased the physical hazard, the court voided the policy without mentioning causal relationship between the breach and the loss.
In Brough v. Presidential Fire & Marine Ins. Co., 189 La. 880, 181 So. 432 (1938), an insurer invoked a warranty provision in a fire policy requiring unconditional ownership of the insured property. The court reiterated the rule that a warranty breach does not per se void a policy but must also increase the physical or moral risk to the insured property to achieve such a result. The court also noted that the burden of proof of increase in physical or moral risk is incumbent upon the insurer invoking the warranty. Likewise, the court reiterated the rule that each such case must depend upon its own facts and circumstances. Finding no increase in moral hazard resulting from the insured’s ownership of less than an unconditional interest, the court permitted recovery under the policy.
American Indemnity Co. v. Newsom, 79 So.2d 392 (La.App. 2d Cir. 1955), was concerned with breach of a warranty that the insured building would not be left vacant more than 60 days without notice to the insurer. The structure was insured as one in which intoxicating beverages were sold for consumption both on and off the premises. The court found that the breach did not increase the physical hazard and permitted the insured recovery. The court also placed considerable stress on the fact that the insurer’s agent had notice of the vacancy-
It thus appears that our courts have repeatedly applied the rule that breach of warranty will void a policy of fire insurance, provided the insurer bears the burden of establishing a resultant increase in either the moral or physical hazard. Granted that in the “vacancy” cases above mentioned, there appears some contradiction in the results reached. Nevertheless, in each such case, a specific finding was made as to whether breach of the occupancy or vacancy warranty did or did not increase the physical hazard. No case in our jurisprudence has held that the breach must bear a causal relationship to the damage or loss.
It is well settled that insurers may, by unambiguous and clearly noticeable provisions, limit their liability by imposing such *1244 reasonable conditions as they desire upon the obligations they assume. Breaux v. St. Paul Fire & Marine Insurance Co., 326 So.2d 891 (La.App. 3rd Cir. 1976).
When the terms of an insurance contract are clear and unambiguous, they form the law between the parties and are entitled to enforcement according to their terms. LSA-C.C. Article 1901; Mauterer v. Associated Indemnity Company, 332 So.2d 570 (La.App. 4th Cir. 1976).
In this instance, the record establishes beyond question that failure to have an operable fire extinguisher of the type required by the policy, or an equivalent thereof, on the machine while it was operating in the woods, is a patent breach of the insured’s warranty. So, too, is the insured’s failure to substantially comply with the warranty provision of cleaning the machine during daily operation and at the end of each day’s work.
The record is clear that breach of these warranties resulted in a significant increase in the physical hazard to the machine. The record shows clearly that a skidder is highly-vulnerable to fire which may result from the accumulation of tinder like materials in its engine compartment incident to its operation in the woods. To reduce this known and recognized hazard, the insurer reasonably required periodic cleaning during daily use, and also at the end of each day’s work. The latter requirement was obviously intended to reduce the hazard of fire occurring after workmen retired from the scene upon completing their day’s work, leaving the machine unattended.
We find no merit in Insured’s contention that the presence of an operable fire extinguisher would not have reduced the risk of this particular fire because the fire was beneath the floorboards and therefore inaccessible. Assuming this to be true, it is a matter of no consequence. The absence of an operable fire extinguisher increased the risk of damage by fire which is all that is required to void the policy for breach of warranty.
We also find no merit in Insured’s contention that the fire did not start in the engine compartment but under the operator’s seat. In this regard, the evidence does not show where the fire began; it is shown merely that the operator first detected the fire coming from beneath the floorboards of the cab. Moreover, it is immaterial where the fire began. Since Insured’s breach of warranty increased the physical risk, the policy is voided.
The judgment of the trial court is reversed and judgment rendered herein in favor of defendants Northwestern National Insurance Company and Interstate Surplus Underwriters, Inc., and against plaintiff, Robert Rodriguez and Intervenor, Crawler Supply Company, Inc., rejecting Insured’s demands with prejudice, all costs of these proceedings to be paid by Insured and In-tervenor.
Reversed and rendered.
CLAIBORNE, J., concurred with result and legal conclusions of majority and filed opinion.
COLE, J., filed dissenting opinions.
LOTTINGER, J., dissented for reasons assigned by COLE, J.