**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 23, 2006**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30469

_____

HENRY'S MARINE SERVICE, INC.,

Plaintiff - Appellee,

versus

FIREMAN'S FUND INSURANCE COMPANY; ET AL,

Defendants,

FIREMAN'S FUND INSURANCE COMPANY,

Defendant - Appellant.

------------------------------

FIREMAN'S FUND MCGEE MARINE UNDERWRITERS,

Plaintiff-Appellant,

versus

HENRY'S MARINE SERVICE, INC.,

Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Fireman's Fund Insurance Company (Fireman's Fund) appeals the district court's judgment for Henry's Marine Service, Inc. (Henry's Marine) complaining of the court's summary judgment on policy coverage, its refusal to allow Fireman's Fund to amend its pleadings, and its refusal to exclude evidence of damages presented by Henry's Marine. We affirm.

## I. Facts and Proceedings Below

Henry's Marine is a boat brokering/chartering business located in Morgan City, Louisiana. From February 12, 2000 to February 12, 2003, Fireman's Fund insured Henry's Marine under a Hull & Machinery policy and a Boat Broker's policy, both of which were renewed annually. During this period, Henry's Marine was also insured by New York Marine and General Insurance Company (New York Marine) under a Marine General Liability policy.[1]

***The policy's exclusion of, and extension for, assumed contractual liability***

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]In addition, Henry's Marine was insured under a Protection and Indemnity policy and a Pollution Liability policy underwritten by other insurers. Those policies, however, were not placed at issue in this case.

The principal issue involved in this appeal is the coverage provided to Henry's Marine for assumed contractual liability under Fireman's Fund's Boat Broker's policy. The "exclusions" clause of the Boat Broker's basic policy states that "this insurance does not apply" to some ten different listed matters, the second of which ("B") is "[t]o liability assumed by the Assured [Henry's Marine] under any contract or agreement but this exclusion shall not apply if the Assured would have been liable irrespective of such contract or agreement." On the other hand, the Boat Broker's policy also includes as a separate page entitled "contractual liability (hold harmless/indemnity) extension" the following provision:

> "Underwriters hereon agree to give their permission for the Insured [Henry's Marine] to enter into Time or Voyage Charter Agreements whereby the Insured agrees to hold harmless and indemnify the Time or Voyage Charterer for any and all sums said Time or Voyage Charterer may be legally obligated to pay including legal and other expenses arising out of the use, management or operation of such Time or Voyage chartered vessels by the Insured. This insurance is extended to cover the Insured for any such sums as the Insured may be legally obligated to pay including legal and other expenses as a result of the signing of such Time or Voyage Charter Agreements by the Insured.

> However, the language of this or any other endorsement to this policy shall not be construed to extend the Underwriters' agreement to indemnify the Insured for any type of claim not otherwise covered by the Boat Broker's Policy."

Tetra Applied Technologies, L.P. (Tetra) is Henry's Marine's largest customer. Until March 1, 2000, Tetra chartered vessels from Henry's Marine under an oral charter agreement. On March 1,

3

2000, Henry's Marine and Tetra formalized the oral charter agreement by entering into a written Master Time Charter Agreement (MTCA).  Thereafter, Tetra chartered vessels from Henry's Marine under the MTCA.  Under both the oral charter agreement and the MTCA, Henry's Marine agreed to defend, indemnify, and hold Tetra harmless for, among other things, injuries to third parties in connection with a chartered vessel.

### The Underlying Lawsuits – Francis, Moutinho, and Sellers

In 1999, Henry's Marine chartered the M/V Tampa Bay to Tetra under the oral charter agreement.  Daniel J. Francis, Jr., a seaman who worked aboard the M/V Tampa Bay, sued Tetra on June 7, 2001, alleging that he suffered serious physical injuries attempting to retrieve a tow line in September 1999.  Tetra subsequently demanded that Henry's Marine defend and indemnify Tetra in this action.[2]  Henry's Marine, in turn, notified Fireman's Fund and requested that Fireman's Fund provide coverage under the Contractual Liability Extension of the Boat Broker's policy.  Fireman's Fund denied coverage for Henry's Marine in the Francis action against Tetra.

On January 3, 2001, Henry's Marine chartered the M/V Diana McCall to Tetra under the MTCA.  In April 2001, Troy Moutinho, the captain of the M/V Diana McCall, sued his employer, Cameron

---

[2]We note that the date of Francis's alleged injury is prior to February 12, 2000, the beginning date for coverage of Henry's Marine under the policies issued by Fireman's Fund.  On the other hand, Francis's lawsuit against Tetra and Tetra's demand on Henry's Marine occurred during the coverage period.  Fireman's Fund's amended complaint for declaratory judgment states that its Boat Broker's policy applies to the Francis action.  As the parties have not made an issue of the date of Francis's injury, nor shall we.

4

Offshore Boats, Inc. (Cameron), alleging that he suffered serious physical injuries as he loaded scaffolding boards onto the tug in January 2001. In May 2001, Cameron filed a third-party petition against Tetra, which demanded that Henry's Marine defend and indemnify Tetra in accordance with the MTCA. Henry's Marine notified Fireman's Fund of Tetra's demand and requested coverage. In December 2001, Moutinho amended his petition to join Tetra as a primary defendant. On February 27, 2002, Fireman's Fund, relying on the base policy's contractual liability exclusion, denied coverage for Henry's Marine in the Moutinho action against Tetra.

On July 6, 2001, Wayne Sellers, a seaman who worked aboard the M/V Diana McCall, sued his employer Cameron alleging that he was injured in February 2001 during docking operations. In December 2001, Cameron filed a third-party petition against Tetra, which demanded that Henry's Marine defend and indemnify Tetra in accordance with the MTCA. In February 2002, Sellers amended his petition to join Tetra as a primary defendant. On February 27, 2002, Fireman's Fund, relying again on the policy's exclusion for contractually assumed liability, denied coverage for Henry's Marine in the Sellers action against Tetra.

### The Two Declaratory Judgment Suits

On September 20, 2002, Fireman's Fund filed an action in the United States District Court for the Southern District of Texas seeking a declaration that no coverage existed under the Boat

5

Broker's policy for Henry's Marine's claims related to the Sellers action. On December 13, 2002, Henry's Marine filed suit against both Fireman's Fund and New York Marine in the United States District Court for the Eastern District of Louisiana seeking a declaration that coverage existed under both insurers' policies for Henry's Marine's obligations to defend and indemnify Tetra in all three of the underlying actions against Tetra. Henry's Marine also brought bad faith claims against both insurers under Louisiana law. Meanwhile, in the Southern District of Texas, Fireman's Fund was ordered to amend its complaint to include the Francis and Moutinho actions in addition to the originally pled Sellers action.[3] On

---

[3]In its amended complaint with regard to all three of the underlying actions, Fireman's Fund sought a declaration that:

"a. No coverage exists for Henry's Marine's claims for defense and indemnity pursuant to the Boat Brokers' Liability Insurance, because the Policy does not provide coverage to defend and indemnify Henry's Marine for any type of claim not otherwise covered by the Boat Brokers' Policy;
b. No coverage exists for Henry's Marine's claim for defense of Tetra, in the Seller's [sic] action, the *Francis* action or the *Moutinho* action, because the Policy does not provide coverage for defense of Tetra. The Policy provides coverage for defense of suits against Henry's Marine . . . ;
c. No coverage exists for Henry's Marine's claim for defense and indemnification of Tetra, resulting from an alleged contract or agreement between Henry's Marine and Tetra, because the Policy excludes liability assumed by Henry's Marine under any contract or agreement, except if Henry's Marine would have been liable irrespective of such contract or agreement, and there would be no liability on behalf of Henry's Marine, irrespective of the Master Time Charter Agreement, for the negligence alleged against Cameron and Tetra.
d. The policy does not provide hull insurance and/or P&I insurance on vessels not owned by Henry's Marine, and specifically scheduled in the Policy, as Henry's Marine has contracted to do. The M/V DIANA MCCALL is not owned by Henry's Marine, or scheduled in the Policy. To the extent the vessels at issue in the *Francis* action and the *Moutinho* action are not owned by Henry's Marine, those vessels are not covered vessels as scheduled in the Policy."

June 27, 2003, Fireman's Fund's action was transferred from the Southern District of Texas to the Eastern District of Louisiana, where, on July 14, 2003, it was consolidated with the action brought by Henry's Marine. Jurisdiction in these actions was properly based on diversity of citizenship. 28 U.S.C. § 1332.

Fireman's Fund's answer to Henry's Marine's complaint consisted of a denial of all allegations, plus some inapplicable boilerplate invoking negligence by Henry's Marine or third parties, unavoidable accident, act of God, weather conditions, inscrutable fault, and/or intervening or superseding events. In its answer, Fireman's Fund also pleaded that it owed no duty and breached no duty to Henry's Marine that proximately caused the alleged damages. Fireman's Fund's answer did not plead that Henry's Marine had breached any of its warranties under the Boat Broker's policy. The court's scheduling order required that all amendments to pleadings be filed by July 21, 2003. No amended answer was filed.

### *Summary Judgment for Henry's Marine*

Henry's Marine and Fireman's Fund both moved for summary judgment on the question of coverage for the defense and indemnity claims made by Tetra. Henry's Marine's summary judgment argument relied upon the "Contractual Liability (hold harmless/indemnity) Extension" to the Boat Broker's policy, while Fireman's Fund's argument relied primarily upon that policy's exclusion for contractually assumed liability. In addition to the exclusion,

7

Fireman's Fund also argued the policy did not cover these claims because the vessels in question were not scheduled under the base policy's Loss Payable Clause and also because the base policy's Privilege to Charter Clause prevented any party from being "deemed an Additional Assured . . . unless that party is actually engaged or involved in the operations at the time of the loss, if any." The district court rejected Fireman's Fund's arguments related to the Loss Payable Clause and the Privilege to Charter Clause and found that the Boat Broker's policy's exclusion for contractually assumed liability was in direct conflict with the policy's "contractual liability (hold harmless/indemnity) extension." In addition, the district court found that the language of the second paragraph of the policy's said extension was ambiguous and subject to more than one reasonable interpretation, and therefore must be construed against Fireman's Fund and in favor of coverage. The court noted that Fireman's Fund had offered *no* reasonable explanation of what the extension covers and that Fireman's Fund's interpretation would lead to the absurd result of rendering the extension redundant and meaningless. On October 22, 2003, the district court granted Henry's Marine's motion for summary judgment, declaring that coverage existed for the defense and indemnity claims made by Tetra against Henry's Marine under the Boat Broker's policy issued by Fireman's Fund.

8

***Fireman's Fund's Rule 59 motion and other post-summary judgment proceedings***

On October 27, 2003, Fireman's Fund filed a Rule 59 motion for a new trial or, in the alternative, reconsideration. In this motion, Fireman's Fund not only repeated its argument that the Exclusion precludes coverage for any contractually assumed liability, but also argued that, assuming the policy language was ambiguous, the district court should have applied the reasonable expectations doctrine, under which "[t]he court should construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.'" *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994) (quoting *Trinity Industries, Inc. v. Ins. Co. of North America*, 916 F.2d 267, 269 (5th Cir. 1990)). In its motion for a new trial, Fireman's Fund argued that the policy interpretation adopted by the district court could not have been the intent of the parties because it results in Fireman's Fund, for a premium of only $3,500, becoming the primary liability insurer for any company that charters a vessel from Henry's Marine — an "unreasonable position" considering that Fireman's Fund charged a premium of $82,069 to Henry's Marine for Hull & Machinery coverage for only three scheduled vessels. In the motion for a new trial, Fireman's Fund also offered an explanation and examples of what the policy Extension does cover under its interpretation. The final argument offered by Fireman's Fund in its motion for a new trial was that

9

Henry's Marine did not show that it had complied with its obligations under paragraph 13 of the Boat Broker's policy to obtain $1,000,000 in Protection & Indemnity coverage naming Henry's Marine as an additional assured.[4]

On December 15, 2003, the district court denied Fireman's Fund's motion for new trial or reconsideration. With respect to Fireman's Fund's argument that Henry's Marine had not shown its compliance with certain terms in the policy, the court noted that Fireman's Fund had "ample opportunity to assert these provisions" in earlier filings. The district court also noted that, in Louisiana, an insurer-defendant relying on the breach of a material warranty must plead specially this defense and then carry the burden to prove it by a preponderance of the evidence.[5] The court found that Fireman's Fund had not met its burden.

---

[4]Paragraph 13 of the Boat Broker's policy provides:

"IT IS A WARRANTY OF THIS POLICY THAT:
All vessels chartered must have Hull Insurance to value and a minimum of US $1,000,000.00 or Hull Value whichever is the greater, Protection and Indemnity including Collision and Towers Liability of US $1,000,000.00 or to Hull Value whichever the greater. This insurance to be carried at Owners [sic] expense. Said policy must name INSURED as an Additional Assured and waive rights of subrogation against INSURED[.] Certificate of Insurance to be obtained/on file with Gulf Coast Marine, Inc."

[5]In this the district court relied on *Rodriguez v. Northwestern Nat. Ins. Co.*, 358 So.2d 1237, 1241 (La. 1978) ("Breach of warranty is a special defense which the insurer has the burden of proving by at least a preponderance of evidence."); *Lee v. Travelers Fire Ins. Co.*, 53 So.2d 692, 695 (La. 1951) ("'The Supreme Court has stated . . . that, where an insurance company seeks to avoid liability because of the breach of a material warranty contained in the policy, the defense must be pleaded specially and that the insurer has the burden of proving by a preponderance of evidence that the breach did increase the moral hazard of the risk.'" (quoting *Rickerfor v. Westchester Fire Ins. Co. of New York,* 186 So. 109, 112 (La.App. 1939)); and *Benjamin v. Connecticut Indem. Ass'n*, 11 So. 628, 629 (La. 1892).

Fireman's Fund thereafter moved for leave to file a second amended complaint and first amended answer to assert the "warranty" provision of the Boat Broker's policy. After these motions were denied by the magistrate judge on January 8, 2004, Fireman's Fund moved for a review of the magistrate judge's ruling. On February 5, 2004, the district court affirmed the magistrate judge's denial of leave to amend, finding that Fireman's Fund had not shown "good cause" as required by Rule 16(b), which "governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003).

On January 30, 2004, Fireman's Fund moved to exclude Henry's Marine's evidence of damages pursuant to Federal Rules of Civil Procedure 26 and 37. On February 10, 2004, the district court denied this motion, finding no abuse of the discovery process by Henry's Marine. On February 9 – 10, 2004, the district court conducted a bench trial on the amount of damages and on the question of bad faith denial of claims. On April 8, 2004, the court ruled that Henry's Marine was entitled to defense and indemnity costs from Fireman's Fund of $425,972.00 plus additional attorneys' fees through trial. The court also ruled that Fireman's Fund and New York Marine had not denied Henry's Marine's claims in bad faith in violation of La. Rev. Stat. § 22:1220(B)(1). On May 17, 2004, the district court vacated its award to Henry's Marine

11

for the attorneys' fees incurred in litigating this matter, and, on June 2, 2004, the district court entered judgment in favor of Henry's Marine for $378,371.92 plus interest from that date as well as for costs in the additional amount of $4,883.53. Fireman's Fund appeals.

## II. Discussion

On appeal, Fireman's Fund raises five points of error. First, Fireman's Fund asserts that Henry's Marine failed to satisfy all conditions precedent, including policy warranties, to prove that it is entitled to coverage under the policy. Second, Fireman's Fund argues that the district court abused its discretion by not allowing Fireman's Fund to amend its pleadings. Third, Fireman's Fund claims error by the district court in finding coverage under the Boat Broker's policy. Fourth, Fireman's Fund claims error by the district court in failing to exclude Henry's Marine's evidence of damages under Federal Rule of Civil Procedure 37(c)(1). Fifth, Fireman's Fund argues that Henry's Marine failed to prove that its alleged loss was covered by the Boat Broker's policy.

### A. *Whether Henry's Marine satisfied all conditions precedent to prove that it is entitled to coverage under the Boat Broker's policy*

Fireman's Fund argues that the district court erred as a matter of law in finding coverage for Henry's Marine's claims in spite of the fact that Henry's Marine did not prove that it had satisfied all conditions precedent, including the explicit

12

warranties, under the Boat Broker's policy. The district court found that the substantive law of Louisiana governs this dispute.[6] As the district court noted, the Supreme Court of Louisiana has said that an insurer has the burden to prove, by at least a preponderance of the evidence, that the insured breached a warranty in the insurance policy. *Rodriguez v. Northwestern Nat. Ins. Co.*, 358 So.2d 1237, 1241 (La. 1978). The policy provision that Fireman's Fund now relies upon is an explicit warranty. In fact, it begins with the words, "It is a warranty of this policy that . . . ." *Supra note 4*. Therefore, *Rodriguez* places the burden on Fireman's Fund to prove that Henry's Marine breached this warranty.[7] Because Fireman's Fund presented no evidence to show a

---

[6]Both Fireman's Fund and Henry's Marine cite to Louisiana cases in support of the arguments in their appellate briefs. At oral argument, however, Fireman's Fund appeared to contest the application of Louisiana law, pointing instead to maritime law. In its brief, on the other hand, Fireman's Fund argued that "Louisiana law does not conflict with maritime law" on this issue. Because neither party appealed the district court's decision that Louisiana law governs this dispute, we will rely on Louisiana law.

[7]In its brief and at oral argument, Fireman's Fund relied on the Second Circuit's opinion in *Commercial Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26 (2d Cir. 1999). In *Commercial Union*, the Second Circuit noted, "Under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover." *Id*. at 31. Fireman's Fund makes much of the Second Circuit's strict-compliance language. Although we do not disagree with the Second Circuit's statement of the general rule requiring strict compliance, the *Commercial Union* opinion does not discuss the appropriate burden of proof and, therefore, it does not help Fireman's Fund on this issue. Moreover, the insurer-defendant in *Commercial Union* raised the warranty defense when it initially denied coverage and again in the litigation at the trial court. For this reason, *Commercial Union* stands in stark contrast to this case, where Fireman's Fund did not deny coverage based on a warranty defense and did not raise the warranty defense until after losing the coverage issue on summary judgment.

13

breach, we agree with the district court that Fireman's Fund did not meet its burden.

Presumably to avoid *Rodriguez*, Fireman's Fund nonetheless argues that "[t]he jurisprudential treatment of insurance law provides that the terms 'warranty' and 'condition precedent' are often used interchangeably," and that "[i]t has been widely held in American jurisprudence that the burden to prove compliance with a condition precedent of an insurance policy is on the insured." Fireman's Fund supports this statement by citing to state cases from Iowa, Connecticut, Virginia, and Nebraska and to federal district court cases from New York, Vermont, Delaware and Illinois. Fireman's Fund also points to a 1937 Louisiana intermediate court opinion that quoted a treatise the stated, "'A warranty is in the nature of a condition precedent . . . .'" *City Bank & Trust Co. v. Commercial Casualty Co.*, 176 So. 27, 30 (La. App. 2d Cir. 1937) (quoting 14 Ruling Case Law, p. 1026, § 206). Even assuming *arguendo* that we were willing to treat the warranty at issue in this case as a condition precedent and place the ultimate burden of proof of compliance on Henry's Marine, Fireman's Fund's argument still fails because it did not timely make the "condition precedent" an issue in the coverage dispute. In every case cited by Fireman's Fund to support its argument that the burden to prove compliance with a condition precedent is on the insured, the insurer had timely raised the insured's lack of compliance as a

14

defense to coverage in the trial court. In this case, however, Fireman's Fund raised the alleged lack of compliance by Henry's Marine only after it lost the coverage issue on cross-motions for summary judgment.

**B.**   ***Whether the district court erred by not allowing Fireman's Fund to amend its pleadings***

After the district court granted summary judgment for Henry's Marine on the issue of coverage and denied Fireman's Fund's motion for new trial/reconsideration, Fireman's Fund moved for leave to amend its pleadings to assert the warranty as a defense. The motion for leave to amend was denied by the district court. A district court's denial of leave to amend is reviewed for an abuse of discretion. *Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999).

Fireman's Fund argues that the district court abused its discretion because Federal Rule of Civil Procedure 15(a) requires the trial court to freely grant leave to amend. Rule 15(a), however, is not the correct rule to apply in this situation. Instead, because Fireman's Fund's motion for leave to amend was filed almost five months after the deadline for amendments set by the scheduling order, Rule 16(b) applied, requiring Fireman's Fund to show "good cause." *See S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). The district court noted Fireman's Fund admission that the reason it did not plead the warranty defense earlier was that it thought it would

15

prevail on its other argument. We agree with the district court's observation that "[t]his is not good cause for not having timely asserted all of its possible defenses in its declaratory complaint or in its answer to plaintiff's declaratory complaint."

Moreover, even under the more lenient standard of Rule 15(a), the district court did not abuse its discretion by denying Fireman's Fund leave to amend. "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967). "Further, after summary judgment has been granted, the court has 'even more reason for refusing to allow amendment.'" *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982) (quoting *Freeman*, 381 F.2d at 469). In *Freeman*, we held that "a district court does not abuse its discretion in refusing to allow amendment of pleadings to change the theory of a case if the amendment is offered after summary judgment . . . and no valid reason is shown for failure to present the new theory at an earlier time." *Id.* at 470. "We have consistently followed *Freeman*." *Briddle v. Scott*, 63 F.3d 364, 380 (5th Cir. 1995); *see also Wentwood Woodside I, LP v. GMAC Commercial Mortg.*, 419 F.3d 310, 318 (5th Cir. 2005). The district court noted that Fireman's Fund had agreed that the issue of coverage was ready for summary judgment. In addition, the district court noted that Fireman's Fund had failed to raise the warranty defense at least four times

16

prior to summary judgment.[8]  We hold that the district court did not abuse its discretion in denying Fireman's Fund's motion for leave to amend its pleadings.

## C.   *Whether the district court erred by granting summary judgment to Henry's Marine on the issue of coverage*

Fireman's Fund also claims error by the district court in granting summary judgment for Henry's Marine on the issue of coverage in spite of the policy's exclusion for contractually assumed liability.  We review the district court's grant of summary judgment and its interpretation of the insurance policy *de novo*, applying the same standards as the district court.  *American Guar. and Liability Ins. Co. v. 1906 Co.*, 129 F.3d 802, 805 (5th Cir. 1997).

Fireman's Fund based its motion for summary judgment on three legal arguments.  First, Fireman's Fund argued to the district court that coverage was precluded because the vessels involved in the underlying lawsuits, although they had been chartered from Henry's Marine by Tetra, were not listed in Henry's Marine's policy and, therefore, coverage did not extend to these vessels.  The district court determined that the policy's Schedule of Vessels and Loss Payable Clause was applicable only to the Hull & Machinery,

_____

[8]The four opportunities noted by the district court: (1) Fireman's Fund's complaint for declaratory relief (which was also amended once); (2) Fireman's Fund's answer to Henry's complaint for declaratory relief; (3) Fireman's Fund's motion for summary judgment in the consolidated cases; and (4) Fireman's Fund's response to Henry's Marine's motion for summary judgment.

Protection & Indemnity, and the Pollution Liability sections of the policy, not to the Boat Broker's section of the policy. Fireman's Fund does not appeal the district court's determination on this issue. Second, Fireman's Fund argued to the district court that Henry's Marine's claims for coverage failed because the policy's Privilege to Charter Clause states that "no party shall be deemed an Additional Assured or favored with a waiver of subrogation of any vessel(s) insured hereunder, unless that party is actually engaged or involved in the operations at the time of the loss, if any." The district court determined that this clause was not applicable because Henry's Marine was not asserting that Tetra was an additional assured. Fireman's Fund also does not appeal this determination.

Fireman's Fund's final argument to the district court in its motion for summary judgment was that the Boat Broker's policy explicitly excluded coverage for "liability assumed by Henry's Marine under any contract or agreement unless Henry's Marine would be liable irrespective of the agreement." Therefore, Fireman's Fund urged the district court to find coverage precluded as a matter of law because Henry's Marine was neither the owner nor the operator of the vessels in question and so "Henry's Marine could not be found liable irrespective of any agreement." The district court determined that the language of the exclusion was in direct conflict with the first paragraph of the contractual liability

18

(hold harmless/indemnity) extension, which granted permission for Henry's Marine to enter into charter agreements under which Henry's Marine would agree to hold harmless and indemnify a charterer "for any and all sums said . . . Charterer may be legally obligated to pay including legal and other expenses arising out of the use, management or operation of such . . . chartered vessels by the Insured." Fireman's Fund argued to the district court that, pursuant to the Extension's second paragraph, it does not extend coverage to types of claims not otherwise covered by the Boat Broker's policy. The district court noted that Fireman's Fund's "interpretation would lead to absurd results" because it "would render the Extension redundant and meaningless." After observing that Fireman's Fund had offered no reasonable explanation of what the Extension covers, the district court noted that "a reasonable interpretation of the second paragraph of the Extension is that coverage is provided for contractual liability, unless it runs afoul of some bar *other than* the contractual liability exclusion in the body of the policy."

After summary judgment was granted to Henry's Marine, Fireman's Fund offered a different interpretation of the policy. In Fireman's Fund's Rule 59 motion for a new trial or reconsideration, it argued for the first time that the policy *does* provide coverage for Henry's Marine's assumed contractual liability, but only for liability based on Henry's Marine's

19

agreement to indemnify the charterer for Henry's Marine's negligence or fault as a boat broker. Fireman's Fund repeats this new argument on appeal, but we do not consider it because it was not raised below. "These [Rule 59] motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quotations omitted). Considering the construction of the policy urged in support of the summary judgment, we hold that the district court did not err in determining that the "contractual liability (hold harmless/indemnity) extension" would be rendered meaningless by Fireman's Fund's pre-summary judgment interpretation of it and the base policy exclusion. In any event, Fireman's Fund's new argument is unpersuasive as it does not provide any example of coverage which would have been excluded by the base policy exclusion for contractually assumed liability but was added by "contractual liability (hold harmless/indemnity) extension." The examples suggested by Fireman's Fund are all ones that it characterizes as being instances in which "Henry's Marine could have independent liability" – i.e., liability irrespective of the contractual assumption of liability – "to any beneficiary of the chartered party." But such examples would be ones *not* within the base policy exclusion (which excepts instances where the insured "would have been liable irrespective" of the contractual assumption

20

of liability) and hence do not suffice to give independent meaning to the "contractual liability (hold harmless/indemnity) extension."

 The district court did not err in granting summary judgment on the issue of coverage to Henry's Marine.

***D.   Whether the district court erred by refusing to exclude Henry's Marine's evidence of damages pursuant to Rule 37(c)***

Fireman's Fund contends that the district court erred in refusing to exclude Henry's Marine's evidence of damages pursuant to Federal Rule of Civil Procedure 37.  We review for an abuse of discretion the district court's decision not to exclude evidence under Rule 37.  *Primrose Operating Co. v. National American Ins.*, 382 F.3d 546, 563 (5th Cir. 2004); *Texas A&M Research Foundation v. Magna Transp.*, 338 F.3d 394, 402 (5th Cir. 2003).

Fireman's Fund claims that Henry's Marine violated the disclosure requirements of Rule 26(a)(1)(C) by not providing a computation of damages in its initial disclosure. Rule 26 requires that a party disclose "information then reasonably available to it." FED. R. CIV. P. 26(a)(1). The district court noted that Henry's Marine stated that its damages consisted of the defense and indemnity expenses owed to Tetra and the legal expenses for pursuing coverage from its insurers.  At the time of initial discovery, the coverage dispute was ongoing as were two of the three underlying lawsuits against Tetra, and so Henry's Marine could not provide an exact amount of damages.  We agree with the district court that Henry's Marine's "response was not perfect but

21

it was not a failure to disclose." Fireman's Fund also argues that Henry's Marine violated Rule 26(a)(1)(C) by failing to provide it with any of the documents or evidentiary material to support its claim for damages until less than three weeks before the trial. Rule 26(a)(1)(C) requires only that the party make this evidence available for inspection and copying as under Rule 34. There is nothing to indicate that Henry's Marine did not make this evidence available to Fireman's Fund. On the contrary, the district court noted that Fireman's Fund never attempted to inspect or copy Henry's Marine's damages documents. After reviewing the discovery-related conduct by both parties, the district court determined that exclusion of Henry's Marine's damages evidence under Rule 37 was not warranted. We find no abuse of discretion in this determination.

***E.   Whether the district court erred in finding that Tetra Applied Technologies, L.P. is the successor to Tetra Applied Technologies, Inc.***

Fireman's Fund contends that the district court erred in finding coverage for Tetra's claims against Henry's Marine because the demands were made by Tetra Applied Technologies, L.P. (Tetra L.P.) but the Master Time Charter Agreement obligated Henry's Marine to defend and indemnify Tetra Applied Technologies, Inc. (Tetra Inc.). Fireman's Fund also argues that Henry's Marine paid Tetra L.P.'s claims pursuant to an Asset Purchase Agreement, not

22

the Master Time Charter Agreement contemplated by the Boat Broker's policy.  These arguments are without merit.

As the district court noted, Tetra merely changed its name from Tetra Inc. to Tetra L.P.  The district court identified specific evidence in the record that shows that Tetra Inc. and Tetra L.P. were the same business enterprise.[9]  Moreover, as the district court also noted, the Master Time Charter Agreement between Henry's Marine and Tetra Inc. provided that Henry's Marine agreed to indemnify parents, subsidiaries and affiliates of Tetra Inc.  The district court's determination that Tetra L.P. is the successor to Tetra Inc., or at least its affiliate, is not clearly erroneous, and nothing in the record suggests otherwise.

The district court also found that the Asset Purchase Agreement between Henry's Marine and Tetra L.P. merely acknowledged Henry's Marine's existing obligation under the Master Time Charter Agreement to defend and indemnify Tetra.[10]  There is no basis to disturb the district court's determination that the payments made by Henry's Marine to Tetra L.P. were made pursuant to the Master

---

[9]One example the district court mentioned is Tetra's pleading in the underlying Francis lawsuit.  Although Tetra originally answered as Tetra, Inc., its first supplemental petition began with the following: "NOW INTO COURT, through undersigned counsel, comes Tetra Applied Technologies, L.P., formerly Tetra Applied Technologies, Inc. . . . ."

[10]Supporting this finding is the explicit language of the Asset Purchase Agreement, which provides, "*Pursuant to Article 11 of that certain Master Time Charter* dated March 1, 2000 (the "Time Charter") by and between the Parties, Henry's is required to indemnify TETRA Applied . . . . ." (emphasis added).

23

Time Charter Agreement that was contemplated in — and covered by — Henry's Marine's Boat Broker's policy with Fireman's Fund.

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.